**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LIZDALE KNITTING MILLS, INC., Respondent.**

No. 26, Docket 74–2557.

United States Court of Appeals, Second Circuit.

Argued Sept. 3, 1975.

Decided Sept. 26, 1975.

Howard E. Perlstein, Washington, D. C. (Jay E. Shanklin, Atty., Peter G. Nash, Gen. Counsel, John S. Irving, Deputy Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., on the brief), for petitioner.

Leonard S. Kimmell, Mineola, N. Y. (Kimmell & Kimmell, Mineola, N. Y., on the brief), for respondent.

Before KAUFMAN, Chief Judge, and LUMBARD and ANDERSON, Circuit Judges.

---

**PER CURIAM:**

The N.L.R.B. has petitioned for enforcement of its order of June 25, 1974, 211 N.L.R.B. No. 111, one member dissenting, requiring Lizdale Knitting Mills, Inc. to cease and desist from its efforts to discourage the unionization of its knitted goods plant located in Glendale, New York. Affirmatively, the Board insisted that Lizdale rehire, with back pay, four employees discharged because of their union sympathies. Upon careful review of the record and with due consideration for the contrary opinion of member Kennedy, we find substantial evidence to support the Board's decision and, accordingly, we grant enforcement.

On May 29, 1973, organizers for the Knitgoods Workers Union, Local 155 (the Union) went to respondent's plant to distribute authorization cards as a prelude to seeking a representation election. According to their testimony, they stationed themselves approximately three feet from the foot of a covered, exterior staircase leading to the Lizdale factory. After finishing their day's work, the four dischargees (hereinafter the Ceballos group)[1] came down the staircase, took the proffered authorization cards and, while standing "very close" to the Union organizers engaged in conversation with them. The Ceballos allege, and the hearing examiner found, that they were observed in this activity by Company officers looking out of the main office window on the second floor of the building.

The following morning, the Ceballos group began to distribute among their co-workers extra authorization cards which they had received. At lunchtime, they were approached by Supervisor Herskovitz who informed them that the continuation of such activities would lead to their dismissal.[2] On May 31, they were, in fact, fired.

---

1. The four employees are Abellardo Ceballos, Marta Guerrero and Eucaris Ceballos, his sisters, and Luz Maria Villada, his girlfriend.

2. Abellardo Ceballos testified that this message was transmitted to him in English by Supervisor Herskovitz and that he then translated it into Spanish for the other workers, who corroborate his story. Herskovitz denied making any statement.

Four days thereafter, accompanied by Union personnel, the Ceballos group went back to the factory to request their reemployment. A disturbance ensued, the genesis of which is unclear in the record, and the Union officials were asked to leave. Before their departure they were told by Hyman Gelbord, president of Lizdale, that he would close down the shop rather than "accept the Union."

■ The Company contends that it was unaware of the union sympathies and activities of the Ceballos group who, it maintains, were fired only because they were suspected of having committed various thefts.[3] The discharges took place on May 31, two days after the Union began its organizational campaign. The missing merchandise was first discovered months earlier, in March 1973. Under these circumstances, we agree with the hearing examiner that the Company's defense of dismissal for cause can only be characterized as pretextual. See *N. L. R. B. v. Milco Inc.*, 388 F.2d 133 (1968). We are reinforced in this conclusion by the anti-union animus displayed by Lizdale's president when confronted with a demand for reinstatement.

The Company further argues that its officers could not have seen the Ceballos group in conversation with the Union organizers as the Board alleges, because the roof covering the outside staircase at the base of which they were talking, effectively blocked their view. After a visit to the site by both counsel and the hearing examiner, it was agreed that one looking out the office window could see to a point two feet in front of the staircase. We agree with the inference of the hearing examiner, based upon his personal observation and the principles of Euclidean geometry, that the face of an average sized individual standing one foot in front of the stairs would therefore be visible. Abellardo Ceballos testified that that was approximately the position in which he and the others were standing and that, upon looking up, his view of the office window was unobstructed. In any case, the action of the Ceballos group in distributing authorization cards adequately revealed to the Company their pro-Union stance.[4]

■ Finally, respondent complains that it was prejudiced by the Board's refusal to release the affidavits of witnesses prior to their testimony at the unfair labor practice hearing. We have recently held that pretrial discovery in N.L.R.B. proceedings is neither constitutionally nor statutorily required. *N. L. R. B. v. Interboro Contractors, Inc.*, 432 F.2d 854 (2d Cir. 1970). The Board's procedures are reasonably designed to forestall such intimidation and harassment as would otherwise be possible because of the leverage inherent in the employer-employee relationship. *N. L. R. B. v. National Survey Service, Inc.*, 361 F.2d 199, 206 (7th Cir. 1966).

Enforcement granted.

---

3. When the Ceballos group demanded to know the reason for their dismissal, they were originally told that it was because of a lack of work. The Company now concedes that this was a fabrication motivated assertedly by their fear of a slander suit if their real suspicions were articulated and proved unfounded.

4. Supervisor Herskovitz gave to the Company president several unsigned authorization cards which had been distributed by the Ceballos group and which she had collected from other employees.