**TITLE GUARANTEE CO.,** Appellee,

v.

**NATIONAL LABOR RELATIONS BOARD,** Appellant.

**No. 725, Docket 75–6119.**

United States Court of Appeals, Second Circuit.

Argued Jan. 26, 1976.

Decided April 2, 1976.

---

Joseph Norelli, Atty., N. L. R. B., Washington, D. C. (John S. Irving, Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Abigail Cooley, Asst. Gen. Counsel for Sp. Litigation, N. L. R. B., Washington D. C., of counsel), for appellant.

Roger Kaplan, New York City (Robert Lewis, Jackson, Lewis, Schnitzler & Krupman, New York City, of counsel), for appellee.

Gerard C. Smetana, Jerry Kronenberg, Washington, D. C., Julian D. Schreiber, Chicago, Ill. (Borovsky, Smetana, Ehrlich & Kronenberg, Washington, D. C., Lawrence B. Kraus, Richard B. Berman, U. S. Chamber of Commerce, Washington, D. C., of counsel), for U. S. Chamber of Commerce, amicus curiae.

Before MOORE, OAKES and MESKILL, Circuit Judges.

OAKES, Circuit Judge:

The National Labor Relations Board appeals from an order requiring disclosure under the Freedom of Information Act (FOIA)[1] of investigative statements obtained by the Board from employees (and their union representatives) prior to an unfair labor practice hearing on a charge against their employer for refusal to bargain.[2] The United States District Court for the Southern District of New York, Lee P. Gagliardi, *Judge*, held that such statements were not exempt from the disclosure requirements of the FOIA. He expressly rejected the Board's contention that these statements fell within Exemptions 5, 7(A), 7(C) or 7(D) of the Act, 5 U.S.C. § 552(b)(5), 7(A), 7(C), 7(D).[3] Following the district court's decision on the merits of the FOIA claim, the court directed the Board to produce the statements forthwith or stay the conduct of its administrative hearing. On the Board's appeal, we reverse.[4]

On or about May 28, 1975, District 65 Wholesale, Retail, Office and Processing

---

1. 5 U.S.C. § 552.

2. The charge was made under Section 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5).

3. 5 U.S.C. § 552(b) provides in part:
   This section does not apply to matters that are—

   .    .    .    .    .

   (5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.

   .    .    .    .    .

   (7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings . . . (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source . . . . .

4. Jurisdiction in the district court is provided in 5 U.S.C. § 552(a)(4)(B).

Union, Distributive Workers of America (hereinafter District 65), filed an unfair labor practice charge with Region 2 of the Board alleging that the Title Guarantee Co. had violated §§ 8(a)(3) and (1) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(3) and (1), by refusing to execute a collective bargaining agreement which had been previously agreed upon with District 65. Subsequent amendments to the charge alleged violation of § 8(a)(5) of the Act, 29 U.S.C. § 158(a)(5). The Board conducted an investigation in the course of which it took written statements and affidavits from representatives of District 65 and employees of the Title Guarantee Co. As a result of these investigations, the Board issued a complaint against Title Guarantee on or about June 30, 1975. The Company requested copies of all written statements, signed or unsigned, but the NLRB Regional Director denied them, asserting privilege from disclosure under the exemptions to the FOIA. This ruling was appealed to the Board's General Counsel pursuant to Agency Regulations, 29 C.F.R. § 102.117(c)(2)(ii) (1975), which was denied. Title Guarantee then filed this suit under the FOIA, claiming that the Board's failure and refusal to furnish the requested information is arbitrary and capricious and deprives it of public information, and that absent such information it will be wrongfully precluded from properly preparing its defense and will therefore suffer irreparable injury. Title Guarantee concededly has standing to bring this suit both as a member of the "public," 5 U.S.C. § 552(a), and as a "person" within the language of the statute, 5 U.S.C. § 552(a)(3), and the language of the Administrative Procedure Act, 5 U.S.C. § 551(2). The Board moved for dismissal under Fed.R.Civ.P. 12(b)(6) or alternatively for summary judgment under Fed. R.Civ.P. 56(c), and Title Guarantee cross-moved for summary judgment.

Following *in camera* review of the material in question, 5 U.S.C. § 552(a)(4)(B), the district court concluded that release of the information "would not block further information of the same type from similar sources nor would it stifle effective preparation of the case." The court additionally found that "it does not appear that the specific enforcement proceeding would be harmed," *see* Exemption 7(a), 5 U.S.C. § 552(b)(7)(A), going on to say that whatever value Title Guarantee might gain from the information would not be based "on the timing of such release but rather on its determination of whether any material contained in the released documents supports its contentions." Additionally the court found that the material in question contained "no personal matters which should be protected under Exemption 7(C)" and that the Board had "not presented any evidence that the material which is sought was elicited after an express assurance of confidentiality [such as might bring it within Exemption 7(D) to FOIA]." In this connection the court reviewed the material and concluded that it was not "reasonable to infer that the statements were made under some understanding on the part of the deponent that his statements would be confidential." As the court said, "The nature of the material as well as the identity of the deponents indicates that an understanding of confidentiality or lack of it would be entirely irrelevant to whether the information would have been offered to the Board." The court concluded that the Board had failed to sustain its statutory burden of proof, 5 U.S.C. § 552(a)(4)(B), that there was an exemption from disclosure under FOIA for the investigative materials. The court directed the Board to turn over the materials sought for inspection and copying, failing which the Board would be enjoined from conducting any hearings on the unfair labor practice charge until such time as the Board were in compliance with the court order. The court did not consider that its injunction was barred in any way by *Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 20, 94 S.Ct. 1028, 1038, 39 L.Ed.2d 123, 137 (1974).[5] The Board appeals.

---

5. The district court noted the express vesting of equitable jurisdiction under the Act, 5 U.S.C.

§ 552(a)(4)(B). The Supreme Court's opinion in *Renegotiation Bd. v. Bannercraft Clothing*

Since the substantive effect of acceptance of appellee's disclosure contentions would be tantamount to the issuance of new, broader discovery rules for NLRB proceedings, it is desirable to consider, as preliminary matter, the Board's authority to promulgate rules for the conduct of proceedings before it, 29 U.S.C. § 156, as well as its responsibility to conduct such proceedings "in accordance with the rules of evidence applicable in the district courts of the United States under the rules of civil procedure for the district courts of the United States . . . ." 29 U.S.C. § 160(b). This court has held, in *NLRB v. Interboro Contractors, Inc.*, 432 F.2d 854 (2d Cir. 1970), *cert. denied*, 402 U.S. 915, 91 S.Ct. 1375, 28 L.Ed.2d 661 (1971), that the Labor-Management Relations Act does not specifically authorize or require the Board to adopt discovery procedures.[6] *See also NLRB v. Globe Wireless, Ltd.*, 193 F.2d 748, 751 (9th Cir. 1951). The matter of discovery in enforcement proceedings is a matter committed to the Board's rule-making power. *See NLRB v. Interboro Contractors, Inc., supra*, 432 F.2d at 858; *Electromec Design and Development Co. v. NLRB*, 409 F.2d 631, 635 (9th Cir. 1969). Since 1935 the Board rule pertaining to an enforcement proceeding, now contained in 29 C.F.R. § 102.30 (1975), has not provided for the taking of depositions for the purposes of discovery as in the case of the Federal Rules of Civil Procedure. Instead, it has permitted limited discovery only for the purpose of obtaining and preserving evidence for trial. *NLRB v. Interboro Contractors, Inc., supra*, 432 F.2d at 858. The policy has been said to be a "logical one," *id.*, followed by other administrative agencies and in no way affected by the Adminis-

trative Procedure Act. *Id.* at 858–59. Under the Board rules, however, affidavits become available to a litigant "after a witness called by the general counsel or by the charging party has testified in a hearing upon a complaint . . . ." 29 C.F.R. § 102.118(b)(1) (1975). The rules provide that the administrative law judge shall "order the production of any statement . . . of such witness in the possession of the general counsel which relates to the subject matter as to which the witness has testified [for] examination and use for the purpose of cross-examination." *Id.* In other words, the only discovery available to the party charged with an unfair labor practice under the National Labor Relations Act, absent the requirements of the Freedom of Information Act, is equivalent to that available to a criminal defendant under the Jencks Act, 18 U.S.C. § 3500. Neither the liberal provisions of the Federal Rules of Civil Procedure pertaining to pretrial discovery nor the liberalized rules of the Federal Rules of Criminal Procedure have any bearing on Board discovery procedures. The Board rules prohibit anyone, including any employee of the Board, regional director or administrative law judge, from producing any "files, documents, reports, memoranda, or records of the Board or of the general counsel, whether in response to a subpoena duces tecum or otherwise" except as might be required under the Freedom of Information Act or upon the written consent of the Board or the chairman of the Board. 29 C.F.R. § 102.118(a) (1975). Accordingly, if pre-hearing discovery is to be obtained as a matter of right by a party charged under 29 U.S.C. § 160 with an unfair labor practice, the source for the right must be found within the Freedom of Information Act.[7]

Co., 415 U.S. 1, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974), was expressly limited to renegotiation cases where the nature of the process insured no irreparable harm, and by its own terms that opinion did not purport to decide "whether, or under what circumstances, it would be proper for the District Court to exercise jurisdiction to enjoin agency action pending the resolution of an asserted FOIA claim." *Id.* at 20, 94 S.Ct. at 1038, 39 L.Ed.2d at 137.

6. *Accord, NLRB v. Lizdale Knitting Mills, Inc.*, 523 F.2d 978 (2d Cir. 1975). *But see NLRB v. Miami Coca-Cola Bottling Co.*, 403 F.2d 994 (5th Cir. 1968); *NLRB v. Safway Steel Scaffolds Co. of Georgia*, 383 F.2d 273 (5th Cir. 1967), *cert. denied*, 390 U.S. 955, 88 S.Ct. 1052, 19 L.Ed.2d 1150 (1968).

7. *NLRB v. Martin A. Gleason, Inc.*, Nos. 75–4018, –4045, –4047, 534 F.2d 466, 481 (2d Cir. Mar. 3, 1976), points out that *NLRB v. Interboro Contractors, Inc.*, 432 F.2d 854, 857

■ Before analyzing the specific exemptions claimed under and by virtue of the Act as it now reads, it is well to recall that the thrust of the FOIA since its initial enactment has been to provide for disclosure of governmental files unless an exemption is established. *See Center for National Policy Review on Race and Urban Issues v. Weinberger*, 163 U.S.App.D.C. 368, 502 F.2d 370, 374 (1974). At the same time the courts have gone far prior to the 1974 amendments to protect the executive branch against disclosure. Executive security classification decisions have been held nonreviewable. *Environmental Protection Agency v. Mink*, 410 U.S. 73, 84, 93 S.Ct. 827, 834, 35 L.Ed.2d 119, 130 (1973). A number of decisions held that agencies were not even required to submit material to the court for *in camera* inspection to determine whether a claim to a given exemption was factually correct. *Frankel v. SEC*, 460 F.2d 813 (2d Cir.), *cert. denied*, 409 U.S. 889, 93

S.Ct. 125, 34 L.Ed.2d 146 (1972); *Center for National Policy Review on Race and Urban Issues v. Weinberger, supra; Ditlow v. Brinegar*, 161 U.S.App.D.C. 154, 494 F.2d 1073 (per curiam), *cert. denied*, 419 U.S. 974, 95 S.Ct. 238, 42 L.Ed.2d 188 (1974); *Aspin v. Department of Defense*, 160 U.S.App.D.C. 231, 491 F.2d 24 (1973); *Weisberg v. Department of Justice*, 160 U.S.App.D.C. 71, 489 F.2d 1195 (1973) (en banc), *cert. denied*, 416 U.S. 993, 94 S.Ct. 2405, 40 L.Ed.2d 772 (1974).[8] The courts had, in at least some cases, construed the statutory exemptions from disclosure to their literal limits, reflecting no doubt the agencies' historical bias against such disclosure. The Report of the Senate Committee on the Judiciary accompanying S. 2543, which covered the basic amendments made in 1974, other than the amendments to Exemption 7 which we will discuss below, made it very clear that it was not the congressional intention that the FOIA exemptions be read broadly "either

---

(2d Cir. 1970), and *NLRB v. Lizdale Knitting Mills, Inc.*, 523 F.2d 978 (2d Cir. 1975), held that parties in a proceeding before the Board are not entitled to the full panoply of discovery procedures as a matter of statutory or constitutional right. Only discovery for the limited purpose of obtaining and preserving evidence for trial, as opposed to the purpose of discovery and disclosure, *Gleason, supra*, says, was left to the discretion of the administrative law judge "in order to provide safeguards designed to forestall such intimidation and harassment as would otherwise be possible because of the leverage inherent in the employer-employee relationship." It is precisely that leverage, to which both the majority opinion and Chief Judge Kaufman's concurring and dissenting opinion in *Gleason* refer, to which our opinion makes reference, *infra*, text at note 13.

**8.** *Frankel v. SEC*, 460 F.2d 813 (2d Cir.), *cert. denied*, 409 U.S. 889, 93 S.Ct. 125, 34 L.Ed.2d 146 (1972), in a divided panel held that a *closed* SEC file was not subject even to *in camera* inspection as compiled during a § 10(b) and Rule 10b–5 civil investigation of *Occidental Petroleum Corporation*. The court cited *NLRB v. Clement Bros. Co.*, 407 F.2d 1027 (5th Cir. 1969), dealing with closed labor board files. The *Frankel* majority considered that hindrance to future law enforcement through revelation of investigatory techniques and procedures or disclosure of the names of informants or persons voluntarily cooperating justified the exemption. *Weisberg v. Department of Justice*, 160 U.S.App.D.C. 71, 489 F.2d 1195

(1973), held material in FBI files on President Kennedy's assassination similarly privileged, quoting from Judge Hays' opinion in *Frankel* and relying principally on the need to avoid revelation of "investigatory techniques and procedures." 489 F.2d at 1199. *Aspin v. Department of Defense*, 160 U.S.App.D.C. 231, 491 F.2d 24 (1973), held the Army's review of the My Lai Incident exempt under former Exemption 7 even after there had been 15 courts martial. The *Aspin* court specifically followed *Frankel* as "well reasoned and persuasive." 491 F.2d at 29–30. *Ditlow v. Brinegar*, 161 U.S.App.D.C. 154, 494 F.2d 1073 (1974) (per curiam), followed *Weisberg* in respect to correspondence between the National Highway Traffic Safety Administration and auto manufacturers with respect to *pending* safety defect investigations which had become part of a file which "could conceivably lead to a civil enforcement proceeding." 494 F.2d at 1074. *Center for National Policy Review on Race and Urban Issues v. Weinberger*, 163 U.S.App.D.C. 368, 502 F.2d 370, 374 (1974), seemed on rehearing to qualify *Weisberg* by saying that the court would be governed by "good sense and the essential heft of the case" in respect to a claim of investigatory files" exemption. However, the court did not disturb its previous decision that HEW review of public school segregation and discrimination practices in the North were exempt, "[w]ithout engaging in any 'balance' of considerations . . . ." 502 F.2d at 374.

to prohibit disclosure of information or to justify automatic withholding of information." S.Rep. No. 93–854, 93d Cong., 2d Sess. (1974); Freedom of Information Act and Amendments of 1974 (P.L. 93–502) Sourcebook: Legislative History, Texts and Other Documents 151, 158 (1975) (hereinafter "Sourcebook").[9] Rather, the exemptions "are only *permissive*" and "mark the outer limits of information that may be withheld where the agency makes a specific affirmative determination that the public interest and the specific circumstances presented dictate . . . that the information *should* be withheld." *Id.* We turn to the Board's claim of exemption.

Exemption 7 originally covered "investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency." Un-

der the amended Exemption 7, adopted in 1974, "investigatory reports compiled for law enforcement purposes" are exempt from the FOIA to the extent that disclosure would "interfere with enforcement proceedings," "constitute an unwarranted invasion of personal privacy," "disclose the identity of a confidential source." 5 U.S.C. § 552(b)(7)(A), (C), (D); note 3 *supra.* The Board claims that each of these rationales supports an exemption from disclosure for employee statements obtained in investigation of a pending unfair labor practice charge. Since we agree with the Board that such disclosure would "interfere with enforcement proceedings" and is therefore not required under the statute, we need not decide whether disclosure in this context invades the personal privacy,[10] or destroys the confidentiality,[11] of the Board's sources.

**9.** The Senate Report duly remarked that:
> A number of agencies have by regulation adopted this position that, notwithstanding applicability of an FOIA exemption, records must be disclosed where there is no compelling reason for withholding. (*E. g.,* Interior—43 C.F.R. § 22; HEW—45 C.F.R. § 5.70; HUD—24 C.F.R. § 15.21; DOT—49 C.F.R. § 7.51.) This approach was clearly intended by Congress in passing the FOIA.

Sourcebook at 158.

**10.** The only element of "privacy" under Exemption 7(C) involved that has been suggested by the NLRB is the disclosure of the employees' names as persons who made statements about the pending charge. Of course, under the sixth exemption to the FOIA, which Exemption 7(C) echoes, personal and medical files are not to be ordered to be disclosed if disclosure would constitute an unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(6). Thus, for example, it would constitute an invasion of privacy if a corporation in the wine hobby business were entitled to obtain the names and addresses of all persons who registered with the United States Bureau of Alcohol, Tobacco and Firearms to produce wine for family use in the mid-Atlantic region. *See Wine Hobby U.S.A., Inc. v. IRS,* 502 F.2d 133 (3d Cir. 1974), emphasizing the fact that registrants' home addresses and personal activities, family status, control or responsibility and other personal matters would be disclosed. *See also Rural Housing Alliance v. United States Department of Agriculture,* 162 U.S.App.D.C. 122, 498 F.2d 73 (1974); *Ackerly v. Ley,* 137 U.S. App.D.C. 133, 420 F.2d 1336 (1969). Here, however, the court below examined the material in question and "found no personal matters

which should be protected under Exemption 7(C)." Its decision is supported, we might add, by *Local 30, United Slate, Tile and Composition Roofers v. NLRB,* No. 76–184, 408 F.Supp. 520 (E.D.Pa. Feb. 11, 1976), and *Cessna Aircraft Co. v. NLRB,* 405 F.Supp. 1042, 90 LRRM 3339 (D.Kan.1975). *But see Jamco International Inc. v. NLRB,* No. 76–C–3 (N.D.Okl. Feb. 11, 1976).

**11.** A problem with the Board's contention that its files are protected under this exemption is that the district court found that the Board had presented no evidence that the information was elicited upon an express assurance of confidentiality. In response to an inquiry by the court, "Were these statements given under an assurance of confidentiality at the time or not?" Board counsel replied, "I don't know." The Board's position is that it is reasonable to infer an offer of confidentiality in the circumstances. The district court reviewed the material and concluded that no such inference was reasonable, stating that "the nature of the material as well as the identity of the deponents indicates that an understanding of confidentiality or lack of it would be entirely irrelevant to whether the information would have been offered to the Board." Without deciding the question, we should note that the district court's decision finds support in several other district court cases. *Cessna Aircraft Co. v. NLRB,* 405 F.Supp. 1042, 90 LRRM 3339, 3340 (D.Kan. 1975); *Deering Milliken, Inc. v. Nash,* 90 LRRM 3138, 3144–45 (D.S.C.1975); *Climax Molybdenum Co. v. NLRB,* 407 F.Supp. 208, 90 LRRM 3126, 3127 (D.Col.1975). *See also NLRB v. Hardeman Garment Co.,* No. C–75–148, 460 F.Supp. 510 (W.D.Tenn. Jan. 15,

The Board argues that Exemption 7(A) continues the prior law with respect to the disclosure of investigatory records in "open" cases, in other words, that any disclosure of information as to a *pending* enforcement proceeding would constitute interference with that proceeding. In *Wellman Industries, Inc. v. NLRB*, 490 F.2d 427, 430–31 (4th Cir.), *cert. denied*, 419 U.S. 834, 95 S.Ct. 61, 42 L.Ed.2d 61 (1974), the Fourth Circuit relied on both H.R.Rep. No. 1497, 89th Cong., 2d Sess. 11 (1966), and S.Rep. No. 813, 89th Cong., 1st Sess. 9 (1965), U.S. Code Cong. & Admin.News 1966, p. 2418, to support the conclusion that, prior to the 1974 amendments, the statute did not permit disclosure of statements compiled as ongoing investigative material in connection with pending unfair labor practice proceedings. *See also Wellford v. Hardin*, 444 F.2d 21, 23 (4th Cir. 1971) (purpose of exemption "to prevent premature discovery by a defendant in an enforcement proceeding"). *Cf. Williams v. IRS*, 345 F.Supp. 591, 594 (D.Del.1972), *aff'd per curiam*, 479 F.2d 317 (3d Cir.), *cert. denied*, 414 U.S. 1024, 94 S.Ct. 448, 38 L.Ed.2d 315 (1973). This reading—that Exemption 7(A) requires nondisclosure in any pending enforcement proceeding—finds additional support in some of Senator Hart's language in connection with the introduction of his amendment before Congress in 1974. Senator Hart stated that the original purpose of Congress in enacting the seventh exemption to FOIA in 1966 had been "to prevent harm to the Government's case in court by not allowing an opposing litigant earlier or greater access to investigative files than he would

otherwise have." Sourcebook at 332. Senator Hart pointed out that

[r]ecently, the courts have interpreted the seventh exception to the Freedom of Information Act to be applied whenever an agency can show that the document sought is an investigatory file compiled for law enforcement purposes—a stone wall at that point. The court would have the exemption applied without the need of the agency to show why the disclosure of the particular document should not be made.

*Id.* That, he went on to suggest, was "not consistent with the intent of Congress when it passed this basic act in 1966." *Id.* at 333. Senator Hart's amendment was suggested by the Administrative Law Section of the American Bar Association following upon the report of the Committee on Federal Legislation of the Association of the Bar of the City of New York, which had criticized specifically the Second Circuit decision in *Frankel v. SEC, supra.* The Association of the Bar's Committee Report pointed out that *Frankel* held that investigatory files are exempt from disclosure forever, but that "other jurists" had "reached the conclusion that Exemption 7 was intended only to protect against premature disclosure in a pending investigation, and that once the investigation is completed and all reasonably foreseeable administrative and judicial proceedings concluded, the files must be disclosed."[12] Sourcebook at 334. It was with this particular problem of unavailability of closed files in mind that the 1974 amendments to Exemption 7 were adopted.

1976); *Local 30, United Slate, Tile and Composition Roofers v. NLRB*, No. 76–184, 408 F.Supp. 520 (E.D.Pa. Feb. 11, 1976); *Mylan Pharmaceuticals, Inc. v. NLRB*, No. 76–79, 407 F.Supp. 1124 (W.D.Pa. Jan. 28, 1976).

**12.** Senator Hart's remarks before Congress elaborated further his position on this portion of the 1974 amendments:

Let me clarify the instances in which nondisclosure would obtain: First, where the production of a record would interfere with enforcement procedures. This would apply whenever the Government's case in court—a concrete prospective law enforcement pro-

ceeding—would be harmed by the premature release of evidence or information not in the possession of known or potential defendants. This would apply also where the agency could show that the disclosure of the information would substantially harm such proceedings by impeding any necessary investigation before the proceeding. In determining whether or not the information will be released will interfere with a law enforcement proceeding it is only relevant to make such determination in the context of the particular enforcement proceeding.
Sourcebook at 333.

But appellee argues not without force, and the district court held, that it is not enough to defeat disclosure merely to assert that an enforcement proceeding is pending and that the material has been gathered in connection with that proceeding; rather the exemption must be read complementarily to the *in camera* inspection amendment, 5 U.S.C. § 552(a)(4)(B), and the Board must show to the satisfaction of the court that there would be interference with the particular proceeding for which the investigative materials were gathered, a showing which the district court found was not made here. The Board asserts contrarily that there would necessarily be interference both with the pending charge and with the Board's ability to investigate other charges in three ways: first, suspected violators might be able to use disclosure to learn the Board's case in advance and frustrate the proceedings or construct defenses which would permit violations to go unremedied; second, employees who are interviewed may be reluctant, for fear of incurring employer displeasure, to have it known that they have given information, *see Surprenant Manufacturing Co. v. NLRB*, 341 F.2d 756, 763 (6th Cir. 1965), or union officials might not want to volunteer information for fear of compromising the union's position in negotiations and, third, because these affidavits constitute attorney "work product," revealing investigative and prosecutorial strategy.

We feel it unnecessary to make the broad determination that any investigative information obtained in connection with a pending enforcement proceeding is per se non-disclosable. But we do think that if statements obtained by the NLRB from employees, or their representatives, in connection with unfair labor practice proceedings against an employer were required to be disclosed, interference with the proceedings could well result in the first two ways suggested by the Board. Absent a clearer indication of contrary congressional intent, we are not prepared to hold that disclosure may be required under the FOIA in connection with an ongoing unfair labor practice enforcement proceeding. There is a very large body of law, alluded to only the other day in our *NLRB v. Martin A. Gleason, Inc.*, Nos. 75–4018, –4045 and –4047, 534 F.2d 466, 479 (2d Cir. Mar. 3, 1976), and exemplified in our *Henry I. Siegel Co. v. NLRB*, 328 F.2d 25, 27 (2d Cir. 1964), that an employer request to an employee for his statement may, although it does not invariably, result in employee coercion and an interference with the employee's Section 7 rights under the National Labor Relations Act, 29 U.S.C. § 157. Referring to this law, the *Gleason* panel noted that the courts

have been generous in supporting denials of requests for such pre-hearing statements for a wide variety of specific reasons, e. g. fear, coercion, a fishing expedition by the employer, no valid interest in employer to make the inquiry, and similar factors which militate against the probability that the employee's response to the request can be completely free and voluntary . . . .

*Id.* at 479. The *Gleason* opinion also referred to *NLRB v. Interboro Contractors, Inc., supra*, and *NLRB v. Lizdale Knitting Mills, Inc.*, 523 F.2d 978 (2d Cir. 1975), where we reaffirmed that parties before the Board were not entitled, under statutory or constitutional law, to the discovery procedures provided by the federal rules, but that granting of discovery was within the discretion of the trial examiner "in order to provide the safeguards designed to forestall such intimidation and harassment as would otherwise be possible because of the leverage inherent in the employer-employee relationship." At 481.[13]

We cannot envisage that Congress intended to overrule the line of cases dealing with labor board discovery in pending enforcement proceedings by virtue of a back-door amendment to the FOIA when it could very easily have done so by direct amendment to Section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), or by a blanket enactment pertaining to discovery in pending administrative enforce-

13. *See* note 7 *supra.*

ment proceedings.[14] It is significant that it is never suggested in the legislative history of the 1974 amendment to the FOIA that any such modification of agency discovery rules was intended. The cases that Exemption 7(A) was intended to overrule were for the most part *closed* investigative file cases. As the Attorney General's Memorandum on the 1974 Amendments points out:

> Normally, clause (A) will apply only to investigatory records relating to law enforcement efforts which are still active or in prospect—sometimes administratively characterized as records in an "open" investigatory file . . . .
>
> The meaning of "interfere" depends upon the particular facts. . . . One example of interference when litigation is pending or in prospect is harm to the Government's case through the premature release of information not possessed by known or potential adverse parties.

Sourcebook at 508, 517–18. We think that these remarks are exactly applicable to cases involving pending unfair labor practice proceedings. In light of the delicate relationship which exists between employer and employee, we think that Congress would be very reluctant to change the rather carefully arrived at limitations and procedures for discovery in unfair labor practice proceedings by way of an act which, while dealing with disclosure generally, does not purport to affect such discovery. In short, while we have been impressed with the appellee's grasp of the FOIA amendments and almost persuaded by its argumentation and that of the district court, we are forced to conclude that statements of employees, and their representatives, obtained in connection with unfair labor practice enforcement proceedings are not subject to disclosure as a result of Exemption 7(A). So saying, we do not intend our comments to apply broadly to administrative contexts other than unfair labor practice enforcement proceedings before the NLRB.

We need add in conclusion only that in view of our disposition of appellant's claim under Exemption 7(A) we find it unnecessary to determine the applicability of Exemption 5 (intra-agency memoranda) to these materials.[15]

---

**14.** Other cases which have so held include *Atlas Industries, Inc. v. NLRB*, No. C76–27 (N.D. Ohio Feb. 12, 1976); *Jamco International, Inc. v. NLRB*, No. 76–C–3 (N.D.Okl. Feb. 11, 1976); *Capital Cities Communications, Inc. v. NLRB*, No. C–75–2352, 409 F.Supp. 971 (N.D.Cal. Feb. 8, 1976); *Harvey's Wagon Wheel, Inc. v. NLRB*, No. C–76–2487 SAW (N.D.Cal. Feb. 5, 1976); *Mylan Pharmaceuticals, Inc. v. NLRB*, No. 76–79, 407 F.Supp. 1124 (W.D.Pa. Jan. 28, 1976); *Climax Molybdenum Co. v. NLRB*, 90 LRRM 3126 (D.Col.1975). *See also Local 30, United Slate, Tile and Composition Workers v. NLRB*, No. 76–184, 408 F.Supp. 520, 526–527 (E.D.Pa. Feb. 11, 1976) (denied where history of violence in connection with § 8(b)(1)(A) violations). Holding to the contrary are *Maremont Corp. v. NLRB*, No. Civ.–76–0098–T (W.D.Okl. Mar. 3, 1976); *Goodfriend Western Corp. v. Fuchs*, No. 76–644–T (D.Mass. Feb. 23, 1976); *Deering-Milliken, Inc. v. Nash*, 90 LRRM 3138 (D.S.C.1975) (back pay proceeding); *Cessna Aircraft Co. v. NLRB*, 405 F.Supp. 1042, 90 LRRM 3339 (D.Kan.1975).

**15.** Exemption 5 of the FOIA for "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency," 5 U.S.C. § 552(b)(5), was left unchanged by the 1974 amendments. Appellant claims that affidavits and statements which result from a Board agent's interviews are part of the "attorney's work product" and hence should be "normally privileged in the civil discovery context" under the broad language of *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 154–55, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975), as well as under Exemption 5 to the FOIA. Judge Gagliardi, however, held that the material requested, consisting solely of statements made in support of the union's charges, does not fall within the scope of the "memorandums or letters" clause of Exemption 5, which he read to include the agency's claim of work-product exemption. He ruled that while Exemption 5 doubtless covers internal communications consisting of advice, recommendations and opinions, as well as other materials incorporating deliberative or policymaking processes, it does not cover purely factual or investigatory reports unless those reports are "inextricably intertwined" with the deliberative or policymaking functions of the agency. *See Soucie v. David*, 145 U.S.App. D.C. 144, 448 F.2d 1067, 1077–78 (1971). *See also Environmental Protection Agency v. Mink*, 410 U.S. 73, 89, 93 S.Ct. 827, 837, 35 L.Ed.2d 119, 133 (1973); *Tennessean Newspapers, Inc. v. FHA*, 464 F.2d 657, 660 (6th Cir. 1972); *Bristol-Myers Co. v. FTC*, 138 U.S.App.D.C. 22, 424 F.2d 935, 939, *cert. denied*, 400 U.S. 824, 91

Judgment reversed. The cause is remanded to the district court with instructions to vacate its order staying the appellant's proceedings.

S.Ct. 46, 27 L.Ed.2d 52 (1970). The district court noted that the dichotomy between factual and deliberative material is firmly rooted in the legislative history and policy of the Freedom of Information Act. *See* S.Rep. No. 813, 89th Cong., 1st Sess. 9 (1965); H.R.Rep. No. 1497, 89th Cong., 2d Sess. 10 (1965), U.S.Code Cong. & Admin.News 1966, p. 2418. The court concluded that the documents sought here are not "memorandums," that they do not summarize or evaluate facts or contain recommendations for agency action based upon facts, and that the statements as a whole lack the deliberative quality associated with intra-agency memoranda and attorney's work product. *See NLRB v. Sears, Roebuck & Co., supra,* 421 U.S. at 159–60, 95 S.Ct. at 1518, 44 L.Ed.2d at 49.

Several courts have agreed with Judge Gagliardi on his disposition of the Board's Exemption 5 claim. *See, e. g., Local 30, United Slate, Tile and Composition Roofers v. NLRB,* No. 75–184, 408 F.Supp. 520 at 526 (E.D.Pa. Feb. 11, 1976); *Mylan Pharmaceuticals, Inc. v. NLRB,* No. 76–79, 407 F.Supp. 1124 at 1126 n. 3 (W.D.Pa. Jan. 28, 1976). *But see Jamco International, Inc. v. NLRB,* No. 76–C–3 (N.D. Okla. Feb. 11, 1976), slip op. at 7.