AMERICAN AIRLINES, INC., Plaintiff,

v.

NATIONAL MEDIATION BOARD, George S. Ives, Individually and as Chairman of the National Mediation Board, Robert O. Harris and David H. Stowe, Individually and as members of the National Mediation Board, and Rowland Quinn, Jr., Individually and as Executive Secretary of the National Mediation Board, Defendants,

and

International Brotherhood of Teamsters, Airline Division, Intervenor-Defendant.

No. 78 Civ. 385.

United States District Court,
S. D. New York.

June 5, 1978.

Poletti, Freiden, Prashker, Feldman & Gartner, New York City, for plaintiff; Peyton H. Moss, New York City, of counsel.

Robert B. Fiske, Jr., U.S. Atty. for the Southern District of New York, New York City, for defendants; Michael H. Dolinger, New York City, of counsel.

Roland P. Wilder, Washington, D.C., Cohen, Weiss & Simon, New York City, for defendant-intervenor.

## OPINION

KEVIN THOMAS DUFFY, District Judge.

Plaintiff American Airlines, Inc. has brought this action against the National Mediation Board (NMB), its members and its Executive Secretary, seeking to compel that body to furnish it with certain information pursuant to the Freedom of Information Act, 5 U.S.C. § 552 (FOIA). Defendants have refused to reveal this information on the grounds that it is matter allegedly exempt from disclosure under the FOIA. The International Brotherhood of Teamsters, Airline Division (IBT) was permitted to intervene in the action since the information sought by plaintiff is matter filed by IBT with NMB in support of its application for a NMB investigation, which the IBT hopes will eventually lead to its designation as the collective bargaining agent of certain of plaintiff's employees.

Plaintiff now moves for summary judgment, asserting that as a matter of law it is entitled to the information sought; NMB and IBT oppose this motion and cross move for summary judgment. The NMB also moves to dismiss the complaint for failure to state a claim against the individual defendants.

The following facts are undisputed: In September 1977 the IBT filed an application with the NMB for an investigation as to whether employees of American Airlines in the "passenger service" class or craft wished to be represented by the Teamsters. NMB regulations require that such applications be filed on prescribed forms which require an applicant to indicate the number of employees involved and the number authorizing representation, as well as to describe the evidence of representation forwarded to the NMB. Together with the application, IBT submitted employee authorization cards required under NMB regulations. 29 C.F.R. § 1206.2.[1] On September 15, 1977 the NMB requested that plaintiff supply it with certain information to aid in processing the IBT application. Plaintiff furnished that information on September 20, 1977 and, at the same time, sought the following information pursuant to the

---

1. 29 C.F.R. § 1206.2 requires that an Application for Investigation of a Representation Dispute be accompanied by "proved authorizations" from a prescribed percentage of employees who are members of the "craft or class" covered by the application. Where, as here, the employees are not presently represented, 35% of the employees must submit such authorization. 24 C.F.R. § 1206.2(b). The requisite showing of interest must be established before the NMB will "authorize an election or otherwise determine the representation desires of the employees . . .." 29 C.F.R. § 1206.2.

FOIA: the number of authorization cards filed by the IBT in support of its application, the dates on which the cards have been filed, the number of cards filed on each such date, the form of cards employed by the IBT and the number of cards filed in each form. Defendant Quinn denied plaintiff's request on October 7, 1977 and advised plaintiff that it could appeal this denial to the Chairman of NMB within 30 days. Plaintiff did appeal and on December 6, 1977 the Chairman reversed that portion of Quinn's decision which had denied to plaintiff the form of authorization cards submitted and the dates on which they were submitted. The Chairman affirmed Quinn's determination to withhold the number of authorization cards filed by the IBT and the number of cards supplied on each type of form, based upon exemptions 4 and 7 of the Freedom of Information Act. Thereafter on January 27, 1978 plaintiff filed a complaint seeking a court order compelling the NMB to furnish the requested information.

In addition to the information regarding American Airlines employees, plaintiff, by letter dated November 14, 1977, sought access to all applications for Investigation of Representation Dispute (NMB Form-3) filed by Airline employees since July 4, 1967, in eight specified classifications. The applications were furnished to plaintiff on December 1, 1977; however, that part of the applications setting forth the number of authorizations was deleted. Plaintiff appealed this deletion, whereupon it was advised that since the initial request had specifically exempted authorizations from its coverage, that information had been omitted. It appears, however, that this information was also deemed exempt from the coverage of the FOIA. (See Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment on its Supplemental Complaint at 5). Thereafter, on April 7, 1978 plaintiff submitted its supplemental complaint to include the information sought in

its letter of November 14, 1977, and on May 5, 1978 moved for summary judgment on the supplemental complaint, asking the court to consider all the motions together. On May 12, 1978 the NMB advised plaintiff that it was granting its request insofar as it sought information concerning all cases that have been closed by certification or cases closed for any other reason more than two years before the request.[2] Plaintiff, however, still seeks information as to the cases not falling within these categories, although this reduces to 40 the cases involved.

■■■ With the foregoing as background, I turn to examination of the FOIA and the exemptions invoked by defendants. The FOIA has as its primary purpose increasing public access to government records. See *Bristol-Myers Co. v. F.T.C.*, 138 U.S.App.D.C. 22, 25, 424 F.2d 935, 938 (1970). Although there are nine exemptions to the act, disclosure is its touchstone and an agency opposing disclosure has the burden of proving the applicability of any particular exemption. *Washington Research Project, Inc. v. Department of Health, Education and Welfare*, 164 U.S. App.D.C. 169, 175, 504 F.2d 238, 244 (1974). The exemptions, moreover, are to be narrowly construed, *id.* and, accordingly, uncertainty should be resolved in favor of disclosure.

Defendants rely on sections 4 and 7 in support of their claim that the number of authorization cards filed with the NMB is exempt from disclosure. While the NMB relies particularly on sections 4 and 7(A), the IBT has also raised 7(C) as an applicable exemption.

*Exemptions 7(A) and 7(C)*

Exemption 7 provides that investigatory records compiled for law enforcement purposes need not be disclosed in certain circumstances. These include the circum-

---

**2.** The NMB takes the position that all open cases or cases closed less than two years ago by any reason other than certification are exempt from disclosure under exemptions 4 and 7. The NMB reasons that cases closed less than two years ago by any reason other than certification may be reopened within a short period and hence they continue to be treated as active cases. See 29 C.F.R. § 1206.4 (Note).

stance where such disclosure would interfere with enforcement proceedings, 5 U.S.C. § 552(b)(7)(A), or would constitute an unwarranted invasion of personal privacy, 5 U.S.C. § 552(b)(7)(C). The threshold consideration is whether the number of authorization cards filed by the IBT in support of its application to become a collective bargaining agent amounts to an investigatory record compiled for law enforcement purposes. Defendants argue that NMB's investigation of representation disputes and certification of collective bargaining representatives are essentially the same functions as those performed by the National Labor Relations Board. Accordingly, defendants urge, the decisions finding that the NLRB's records in representation proceedings are investigatory records compiled for law enforcement purposes within the meaning of exemption 7 should control this case. They rely principally upon *Wellman Industries, Inc. v. NLRB*, 490 F.2d 427 (4th Cir. 1974) a case which broadly defined "law enforcement purposes" in the context of the National Labor Relations Act as follows:

> "Whether or not resulting in an unfair labor practice charge, the Board's purpose here was to protect and vindicate rights set out [in the NLRA]. Though procedures vary, if aimed at enforcement of the NLRA we think they are 'for law enforcement purposes' ".

*Id.* at 430. In *Wellman* an employer sought access to affidavits obtained by an NLRB investigator during his inquiry into Union objections to a representation election held at the employer's facility. The affidavits were not sought until a complaint was issued against the employer charging it with refusal to bargain. The employer's defense was improper certification of the Union and it sought the affidavits in connection with this defense. The Court of Appeals for the Fourth Circuit, affirming the district court, found exemption 7(A) applicable to the facts of that case and fashioned the broad definition quoted above.

More recently, the Court of Appeals for the Third Circuit has come to a contrary view of "law enforcement purposes." *Committee on Masonic Homes v. NLRB*, 556 F.2d 214 (3d Cir. 1977). In that case the employer, on behalf of its employees, sought access to authorization cards filed in support of a representation petition with the NLRB. Reasoning that the purpose of enforcing the NLRA was not per se a law enforcement purpose, the Court found exemptions 7(A) and (C) inapplicable. "[L]aw enforcement purposes' must relate to some type of formal proceeding, and one that is pending." *Id.* at 219. The court noted that a broader view would result in the exemption of any records compiled by the NLRB. *See also Donn Products, Inc. v. NLRB*, 93 LRRM 2065 (N.D.Ohio 1976). Moreover, it distinguished *Wellman* and its progeny by noting that they involved situations where the employer seeking access to the authorization cards was involved in an unfair labor practice proceeding at the time of the request. *See L'Eggs Products, Inc. v. NLRB*, 93 LRRM 2488 (E.D.Cal.1976); *NLRB v. Biophysics Systems, Inc.*, 91 LRRM 3079 (S.D.N.Y.1976). *But see Howard Johnson v. NLRB*, 96 LRRM 2214 (W.D.N.Y.1977). After reviewing the pertinent case law, as well as the legislative history surrounding exemption 7, see S.Rep.No.813, 89th Cong., 1st Sess. 9 (1965); H.Rep.No. 1497, 89th Cong., 2d Sess. 11 (1966) U.S. Code Cong. & Admin.News 1966, p. 2418, I am inclined to adopt the view of the Third Circuit that the number of authorization cards [3] submitted in connection with an application for a representation investigation does not fall within exemption 7 since it does not constitute material gathered for law enforcement purposes. To hold otherwise would be to broaden the scope of the exemptions to the FOIA well beyond the apparent intent of Congress. *See Title Guarantee Co. v. NLRB*, 534 F.2d 484 (2d Cir. 1976), the seminal case on exemption 7(A) which held "that statements of employees, and their representatives, obtained *in connection with unfair labor practice en-*

---

**3.** Plaintiff here is not requesting a review of each card nor the name of the person signing the card. There is thus no need for me to pass upon such a request.

*forcement proceedings"* are exempt from disclosure pursuant to 7(A). *Id.* at 492 (Emphasis supplied). In so holding the court stressed that its comments did not extend to "administrative contexts other than unfair labor practice enforcement proceedings before the NLRB", *id.*, thus reiterating that FOIA exemptions are to be strictly construed.

*Exemption 4*

██ Defendants also rely on exemption 4 to support nondisclosure. Exemption 4 provides for nondisclosure of "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). This section has been interpreted to protect "(1) trade secrets and (2) information which is (a) commercial or financial, (b) obtained from a person, *and* (c) privileged or confidential." *Consumers Union of United States, Inc. v. Veterans Administration*, 301 F.Supp. 796, 802 (S.D.N.Y.1969). Since all the parties concede that no trade secrets are involved in the instant matter, the question for my consideration is whether the information sought falls within the second prong of the exemption. All three requirements of this prong must be met before the exemption will be found to apply. *Id. See also Getman v. NLRB*, 146 U.S.App.D.C. 209, 212, 450 F.2d 670, 673 (1971). Thus, the threshold question is whether the information sought is commercial or financial. The NMB and IBT argue that since "labor unions, as unincorporated associations engaged in providing services to employees, are plainly in the channels of commerce," the information sought by plaintiff is related to commerce and hence exempt. (Memorandum in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendant-Intervenor Cross Motion for Summary Judgment at 13). This argument, in effect, would place within the purview of exemption 4 any communication connected with a labor union to any government body. I do not believe that this exemption was intended to encompass such a broad range of information. Unfortunately, the legislative history surrounding exemption 4 is unenlightening insofar as it might reveal congressional intent behind the addition of the words "commercial or financial" information to the exemption. Thus, it would appear that the Congress intended that these words should be given their ordinary meaning. And, despite defendants' worthy arguments, I fail to perceive how the number of authorization cards filed by American Airlines employees can constitute commercial information in its ordinary sense. *See Brockway v. Department of Air Force*, 370 F.Supp. 738, 740 (N.D.Iowa 1974), *rev'd on other grounds* 518 F.2d 1184 (8th Cir. 1975) in which the court, while stressing that confidential information should be protected, also noted that "commercial" is defined as "related to or dealing with commerce . . . having profit as the primary aim." *Id.* n. 2 *citing* Webster's Third New International Dictionary.

 It may be true that revelation of the number of Union authorization cards will give the employer insight into its employees' desires to unionize and thus facilitate an anti-union campaign. It may also be valuable to competing unions. But the desirability of the information does not alone make it commercial in the strict sense. "[T]he reach of the exemption for 'trade secrets or commercial or financial information' is not necessarily co-extensive with the existence of competition in any form." *Washington Research Project v. Department of HEW, supra*, 164 U.S.App. D.C. at 175, 504 F.2d at 244. Most courts considering the issue have not fashioned a concrete definition of the words "commercial or financial." *See, e. g., Washington Research, supra; Getman, supra*, 146 U.S. App.D.C. at 212, 450 F.2d at 673 n. 7; *Bristol-Myers Co. v. F.T.C., supra* at 939 (D.C. Cir. 1970) (remanding to the district court the question whether the information sought contained commercial or financial information). *Cf. Brockway, supra.* Undoubtedly, this is because the terms do not admit of a concrete definition but rather require a case by case analysis. In this case I am unconvinced that the information

sought is of a commercial nature. To qualify as such, in my view, the information should have a more direct relationship with a business venture than does the information sought herein. Accordingly, exemption 4 is inapplicable.

Based upon the foregoing, plaintiff's motions for summary judgment are granted.[4] I find no reason to assess costs or attorneys' fees against the NMB, its officers or members. Nor do I find that they acted arbitrarily in refusing plaintiff's requests for information.

---

4. The government has also moved to dismiss the complaint against the individual defendants. It argues that only an agency may be sued under the FOIA. I note that the case law in this area is not at all clear: Compare *Ott v. Levi*, 419 F.Supp. 750, 751–52 (E.D.Mo.1976) *with Hamlin v. Kelley*, 433 F.Supp. 180, 181 (N.D.Ill.1977). In any event, the statute provides that noncompliance with the district court's order may result in a contempt citation against the responsible employee. 5 U.S.C. § 552(a)(4)(G). This section implicitly suggests that employees of the agency may be sued under the act. Moreover, dismissal of the complaint against the individuals named would serve little purpose where, as here, no costs have been assessed for which they could arguably be responsible.