CAPITAL CITIES COMMUNICA-
TIONS, INC., a New York
Corporation, Plaintiff,

v.

NATIONAL LABOR RELATIONS
BOARD, Defendant.

No. C–75–2352 WHO.

United States District Court,
N. D. California.

Feb. 23, 1976.

Carter, Cook & Voltz, James A. Carter, Pillsbury, Madison & Sutro, Wallace L. Kaapcke, San Francisco, Cal., for plaintiff.

Abigail Cooley, Asst. Gen. Counsel for Special Litigation, Washington, D. C., and Michael Taylor, Regional Atty., Region 20, N.L.R.B., San Francisco, Cal., for defendant.

## OPINION AND ORDER

ORRICK, District Judge.

Plaintiff, Capital Cities Communications, Inc. (Capital Cities), brings this action under the Freedom of Information Act (FOIA), 5 U.S.C.A. § 552 (1967), *as amended,* (Supp.1976), seeking disclosure by the defendant, National Labor Relations Board (NLRB), of certain statements and affidavits obtained in the course of an NLRB investigation of an unfair labor practice charge.

Capital Cities has been charged in an unfair labor practice proceeding presently pending before the NLRB with discharging an employee because of her union activity, in an attempt to defeat the union in an upcoming representation election. The complaint issued in the proceedings alleged that Capital Cities' conduct violated Sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) and (a)(3), and requested that the NLRB enter a bargaining order in favor of the union.

In the course of its investigation of the unfair labor practice charge, NLRB investigators obtained a handwritten memorandum allegedly prepared by an attorney for Capital Cities entitled "Virginia Wilson Problem". NLRB investigators also obtained witness statements and affidavits relating to the charges against Capital Cities and to the manner in which the Virginia Wilson Problem memorandum was procured.

Contending that the Virginia Wilson Problem memorandum is a privileged document which was improperly obtained, Capital Cities demanded that the NLRB return it. Capital Cities also demanded that the NLRB disclose every writing which refers to or resulted from the memorandum. The NLRB interpreted the latter request to encompass witness statements, affidavits, notes and memoranda by NLRB personnel, investigative reports, and intra-agency communications derived from the memorandum. The NLRB treated plaintiff's demand as a request for disclosure of documents under the FOIA. The NLRB denied this request on the grounds that the documents are exempt from disclosure under various exemptions of the FOIA.

Capital Cities thereupon brought this action under the FOIA requesting that the NLRB produce the sought-after documents and that the NLRB be enjoined from conducting a hearing on the unfair labor practice charge prior to the requested disclosure. Plaintiff's request for a temporary restraining order was granted after oral argument. At that time the Court ordered the NLRB to submit its investigatory file in this matter for an *in camera* inspection. 5 U.S.C.A. § 552(a)(4)(B) (1967), *as amended*, (Supp.1976).

At further hearings in this cause, Capital Cities made it clear that it sought in this action only the witness statements and affidavits taken by NLRB investigators in the course of their investigations. Thus, the issues of whether other documents in the NLRB file are subject to disclosure under the FOIA and whether the Virginia Wilson Problem memorandum was properly obtained are not before the Court. The only matters presently before the Court are the parties' cross-motions for summary judgment on the question of whether the witness statements and affidavits must be disclosed. No genuine disputes as to material facts exist on this issue.

Having inspected *in camera* the relevant documents, I find that they are exempt from disclosure under Exemption 7(A) of the FOIA, 5 U.S.C.A. § 552(b)(7)(A) (1967), *as amended*, (Supp. 1976), for the reasons hereinafter set forth.

I.

■ At the outset, the jurisdictional aspects of this matter deserve mention. The FOIA requires that government agencies make public virtually all information not specifically exempted from disclosure under clearly delineated statutory language. *Environmental Protection Agency v. Mink*, 410 U.S. 73, 79, 93 S.Ct. 827, 832, 35 L.Ed.2d 119, 127 (1973). Section 552(a)(4)(B) of the Act vests the district courts with jurisdiction "to enjoin the agency from withholding agency records and to order the production of * * * records improperly withheld". In such a case, the court may make a *de novo* determination of the matter, and may order the records submitted for an *in camera* inspection. The agency bears the burden of sustaining its action. 5 U.S.C.A. § 552(a)(4)(B) (1967), *as amended* (Supp.1976).

■ Notwithstanding NLRB's suggestion to the contrary, I am of the opinion that the district courts have the power to enjoin an NLRB proceeding pending resolution of an FOIA claim. *Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 20, 94 S.Ct. 1028, 1038, 39 L.Ed.2d 123, 137 (1974); *Sears Roebuck & Co. v. NLRB*, 153 U.S.App.D.C. 380, 473 F.2d 91, 93 (1972), *cert. denied* 415 U.S. 950, 94 S.Ct. 1474, 39 L.Ed.2d 566 (1974); *Title Guarantee Co. v. NLRB*, 407 F.Supp. 498, 90 L.R.R.M. 2849 (S.D. N.Y.1975), *motion for stay denied* 90 L.R.R.M. 3238 (S.D.N.Y.1975), now on an expedited appeal to the Second Circuit, decision rendered *rev'd* 534 F.2d 484 (1976).

It should be noted in this regard that this is *not* an action to review decisions of the NLRB regarding discovery matters arising during the hearing in controversy presently pending before the NLRB. This is a separate and distinct action to enforce provisions of the FOIA, the benefits of which are available to "any person". 5 U.S.C.A. § 552(a)(3) (1967), *as amended*, (Supp.1976); *Cessna Aircraft Co. v. NLRB*, 405 F.Supp. 1042, 90 L.R.R.M. 2376 (D.Kan.1975).

## II.

Turning to the merits, the NLRB maintains that affidavits and witness statements obtained by NLRB agents during an investigation of an unfair labor practice charge are exempt from disclosure under Exemptions 7(A), (C), and (D) of the FOIA. These exemptions provide, in pertinent part, that the FOIA does not apply to matters that are:

"(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, * * (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source * * *." 5 U.S.C.A. § 552(b)(7)(A), (C) and (D) (1967), *as amended*, (Supp. 1976).

In interpreting the scope and effect of these exemptions, it is helpful to review the past history of the investigative materials exemption. As originally enacted, this provision (5 U.S.C.A. § 552(b)(7) (1967)) (Exemption 7) protected from disclosure:

"investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency."

Judicial interpretation and the legislative history of this exemption reveal that it was primarily intended to prevent premature disclosure of the results of the government's investigation so that the government could present its strongest case in court. Another purpose was to protect the government's sources of information against reprisals for cooperation or invasion of privacy. *See Wellman Industries, Inc. v. NLRB*, 490 F.2d 427, 430, 431 (4th Cir. 1974), *cert. denied*, 419 U.S. 834, 95 S.Ct. 61, 42 L.Ed.2d 61 (1974); H.R.Rep.No.1497, 89th Cong., 2d Sess. 11 (1966); S.Rep.No.813, 89th Cong., 1st Sess. (1965), U.S.Code Cong. & Admin.News, p. 2418; *Project, Government Information and the Rights of Citizens*, 73 Mich.L.Rev. 1085 (1975) (hereinafter cited as *Project, Government Information* ).

In *Wellman Industries*, the court interpreted the exemption to protect affidavits obtained by an NLRB investigator during inquiry into union objections to a representation election. The court based its holding in part on its assessment that employees would be less likely to make uninhibited statements to NLRB investigators out of fear of reprisal if they knew that their statements would be revealed to an employer. Furthermore, the court followed earlier cases holding that Exemption 7 was necessary to pre-

vent premature discovery by a defendant in an enforcement proceeding. *See, e. g., Wellford v. Hardin*, 444 F.2d 21, 23 (4th Cir. 1971).

Indeed, courts consistently interpreted Exemption 7 as then worded to protect from disclosure affidavits obtained by NLRB agents in unfair labor practices or election proceedings. *See, e. g. Clement Bros. v. NLRB*, 282 F.Supp. 540 (N.D.Ga. 1968), *approved in NLRB v. Clement Bros.*, 407 F.2d 1027, 1031 (5th Cir. 1969); *Barceloneta Shoe Corp. v. Compton*, 271 F.Supp. 591 (D.P.R.1967).

In 1974, however, the FOIA was amended, substantially changing Exemption 7 to its present form. Thus the crucial issue in this case involves an analysis of the meaning and effect of the 1974 amendments in order to determine whether the amendments have undercut the *Wellman Industries* ruling.

One clear purpose of the 1974 amendments was to overrule a series of cases, particularly in the District of Columbia Circuit, which had adopted a rather wooden, mechanical and overbroad interpretation of Exemption 7 as previously worded. The approach of these cases was merely to inquire whether or not the sought-after materials were included in investigatory files. If so, the application of Exemption 7 was automatic. *See, e. g., Center for Nat'l Policy Review on Race and Urban Issues v. Weinberger*, 163 U.S.App.D.C. 368, 502 F.2d 370, 373 (1974). The sponsors of the 1974 amendments rejected the judicial imposition of a stone wall preventing disclosure of information previously available. 120 Cong.Rec. 9329–9330 (daily ed. May 30, 1974) (remarks of Senator Hart); 120 Cong.Rec. 9331 (daily ed. May 30, 1974) (remarks of Senator Kennedy). *See also, Project, Government Information, supra*, at 1095–1097.

Senator Hart expressly criticized the restrictive interpretation of the exemption taken by the District of Columbia Circuit and stated that his amendment was intended to compel any agency withholding documents to justify that action by specifically establishing the manner in which the production of the documents would harm one or more of several enumerated interests. 120 Cong. Rec. 9330 (daily ed. May 30, 1974) (remarks of Senator Hart). *See, Project, Government Information, supra*, at 1097; *Deering Milliken, Inc. v. Nash*, No. C–75–864 (D.S.C., Nov. 12, 1975). Included among the interests which would justify withholding of documents was Exemption 7(A), interference with enforcement proceedings.

Thus, it seems clear that Congress intended to require that the government specify some harm in order to claim the exemption, rather than affording all law enforcement matters a blanket exemption. 120 Cong.Rec. 10868 (daily ed. Nov. 20, 1974) (remarks of Congressman Reid).

However, with the exception of the District of Columbia Circuit line of cases expressly rejected, this amendment was not intended as a radical departure from existing case law. 120 Cong.Rec. 9330 (daily ed. May 30, 1974) (remarks of Senator Hart). Rather, Senator Hart seemed to recognize the need for keeping investigatory files confidential when the agency could specifically demonstrate that disclosure would interfere with enforcement proceedings. As Senator Hart stated:

"My reading of the legislative history suggests that Congress intended that this seventh exemption was to prevent harm to the Government's case in court by not allowing an opposing litigant earlier or greater access to investigative files than he would otherwise have.

\*　　\*　　\*　　\*　　\*　　\*

Then, as now, we recognized the need for law enforcement agencies to be able to keep their records and files confidential where a disclosure would interfere with any one of a number of specific interests, each of which is set forth in the amendment that a number of us are offering.

\*　　\*　　\*　　\*　　\*　　\*

Our amendment is broadly written, and when any one of the reasons for nondisclosure is met, the material will be unavailable. But the material cannot be and ought not be exempt merely because it can be categorized as an investigatory file compiled for law enforcement purposes.

Let me clarify the instances in which nondisclosure would obtain: First, where the production of a record would interfere with enforcement procedures. This would apply whenever the Government's case in court—a concrete prospective law enforcement proceeding—would be harmed by the premature release of evidence or information not in the possession of known or potential defendants. This would apply also where the agency could show that the disclosure of the information would substantially harm such proceedings by impeding any necessary investigation before the proceeding. In determining whether or not the information to be released will interfere with a law enforcement proceeding it is only relevant to make such determination in the context of the particular enforcement proceeding." 120 Cong. Rec. 9329–9330 (daily ed. May 30, 1974) (remarks of Senator Hart).

My reading of the legislative history convinces me that the 1974 amendments were not intended to overrule such cases as *Wellman Industries, supra,* where the court carefully considered the reasons for preserving the confidentiality of witness statements and affidavits in NLRB proceedings and balanced those interests against the interest in public disclosure. Thus, I conclude that *Wellman Industries* was not undermined by the 1974 amendments to Exemption 7 and, therefore, is dispositive of this case.

■ Moreover, examining the specific situation here and weighing the need for disclosure against the harm to the agency, I am convinced that the sought-after witness statements and affidavits should be protected from disclosure under Exemption 7(A). The affidavits and witness statements in the NLRB file relate to the merits of the unfair labor practice charge and to the method in which the contested Virginia Wilson Problem memorandum was obtained. Disclosure of these documents would harm a law enforcement proceeding by the premature release of evidence or information not in the hands of known defendants. In such a situation, I believe that the sponsors of the 1974 amendments did not intend to require disclosure.

The NLRB also contends that its function as an administrative agency would be impaired by the disclosure of affidavits and witness statements and that this alone constitutes a "specific harm" justifying nondisclosure.

First, the NLRB argues that its role in upholding the public interest would be harmed if private citizens are deterred from volunteering information to NLRB agents out of fear that the information they provide will be divulged. The NLRB asserts that the danger of a real deterrent effect from total disclosure is particularly acute in the labor field, where employers can exercise pressure and coercion on employees who cooperate with the NLRB. Indeed, the Supreme Court, recognizing the possibility of employer coercion, extended the protection of the National Labor Relations Act to employees giving statements during NLRB investigations. *NLRB v. Scrivener,* 405 U.S. 117, 92 S.Ct. 798, 31 L.Ed.2d 79 (1972). The need for voluntary disclosure is particularly important to the NLRB because it does not initiate its own proceedings, but rather must await complaints from charging parties.

In the particular circumstances of this unfair labor practice proceeding, I believe that there is specific harm in allowing premature disclosure of witness statements and affidavits. I, therefore, hold that the sought-after witness statements and affidavits are exempt from disclosure under Exemption 7(A).

■ I am quite cognizant of the fact that there is virtually no pretrial discovery in NLRB proceedings and that litigants in such proceedings do not have

access to witness statements obtained during an investigation unless and until the witness is called as a witness in the NLRB proceeding. 29 C.F.R. § 102.-118(b)(1) (1975). The determination by the NLRB that there can be no discovery of information or evidence in advance of hearing on a charge on an unfair labor practice is a decision within the area of authority delegated to the NLRB. *Electromec Design and Development Co. v. NLRB*, 409 F.2d 631, 635 (9th Cir. 1969).

However, sympathetic as the Court may be to the claim that refusal of the NLRB to disclose witness statements results in "trial by ambush", and however disdainful the Court might be of the NLRB's policy of restricting discovery to the bare legal minimum, the wisdom of the NLRB's discovery rules are not before this Court. The Supreme Court has determined that "discovery for litigation purposes is not an expressly indicated purpose of [FOIA]". *Renegotiation Board v. Bannercraft Clothing Corp., supra*, 415 U.S. at 24, 94 S.Ct. at 1040, 39 L.Ed.2d at 140 (1974). The FOIA was not enacted as a discovery device. *Climax Molybdenum Co. v. NLRB*, 407 F.Supp. 208, 90 L.R.R.M. 3126 (D.Colo.1975) (appeal pending). Nor was it intended to serve as a broad discovery tool to circumvent agency rules. *Mylan Pharmaceuticals, Inc. v. NLRB*, 407 F.Supp. 1124, Civil No. 76-079 (W.D.Pa., Jan. 28, 1976); *Roger J. Au & Son, Inc. v. NLRB*, 405 F.Supp. 1200 (W.D.Pa., 1976).

The right of the plaintiff to obtain the material sought must be considered the same as that of any other member of the public. The right is neither increased nor diminished by the fact that the plaintiff is a respondent in an enforcement proceeding. The FOIA is fundamentally designed to inform the public and not to benefit private litigants. *NLRB v. Sears Roebuck & Co.*, 421 U.S. 132, 143 n.10, 149, 95 S.Ct. 1504, 1512, 44 L.Ed.2d 29, 43 (1975).

Thus, in balancing the interests of Capital Cities for disclosure against the reasons for confidentiality proffered by the NLRB, I cannot favor the plaintiff just because it is in litigation with the NLRB.

I am aware that other courts faced with the same issue have reached a contrary result. *See, e. g., Title Guarantee Co. v. NLRB, supra; Cessna Aircraft Co. v. NLRB, supra*. In a thoughtful opinion, Judge Gagliardi in *Title Guarantee* determined after an *in camera* inspection that the disclosure of certain witness statements would not interfere with NLRB proceedings. Judge Gagliardi interpreted the FOIA to require a court to examine each situation individually to determine if any of the specified harms enumerated in the statute would result from the requested disclosure. Rejecting the generalized contentions that the disclosure of witness statements in unfair labor practice proceedings would hinder NLRB investigations, he concluded that the release of the sought-after information would not block further fact gathering nor would it stifle effective NLRB preparation of the case. *Title Guarantee Co. v. NLRB, supra*, 407 F.Supp. 498, 90 L.R.R.M. at 2853.

I decline to follow the reasoning and the result of Judge Gagliardi for two reasons. First, *Title Guarantee* was decided on its own facts. Second, I believe that Judge Gagliardi did not give sufficient consideration to the particular arena in which the witness statements are sought.

As noted, the labor field is an area in which those who cooperate with NLRB investigations are particularly susceptible to pressure. *See, e. g., NLRB v. Survey Service, Inc.*, 361 F.2d 199, 206 (7th Cir. 1966). In this context, I am persuaded that the premature disclosure of information would have the effect of impeding NLRB investigations. *See, Harvey's Wagon Wheel, Inc. v. NLRB*, No. C-75-2487 SAW (N.D.Cal., Feb. 9, 1976).

Moreover, *Title Guarantee* seems to interpret the 1974 amendments to Exemption 7 of the FOIA as substantially undermining the weight of *Wellman Indus-*

*tries.* As discussed, I do not believe that the sponsors of the 1974 amendments had any such intent.

Therefore, I find that the NLRB has demonstrated a sufficient and specific need for confidentiality to warrant the withholding of the sought-after documents under Exemption 7(A). In light of this ruling, I need not reach the further justifications of the NLRB that the statements and affidavits are protected from disclosure by Exemptions 7(C) and (D).

Accordingly, defendant's motion for summary judgment is GRANTED; plaintiff's cross-motion for summary judgment is DENIED.

IT IS HEREBY ORDERED that on or before March 3, 1976, defendant shall lodge with the Court a form of judgment approved as to form by plaintiff.