**NEW ENGLAND MEDICAL CENTER HOSPITAL, Plaintiff, Appellant,**

v.

**NATIONAL LABOR RELATIONS BOARD et al., Defendants, Appellees.**

**No. 76–1288.**

United States Court of Appeals, First Circuit.

Dec. 28, 1976.

Rehearing Denied Jan. 19, 1977.

Richard P. Ward, Boston, Mass., with whom John H. Mason and Ropes & Gray, Boston, Mass., were on brief, for appellant.

John G. Elligers, Atty., Washington, D. C., with whom John S. Irving, Jr., Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, and William Wachter, Asst. Gen. Counsel for Sp. Litigation, Washington, D. C., were on brief, for appellees.

Before COFFIN, Chief Judge, CLARK, Associate Justice,* CAMPBELL, Circuit Judge.

LEVIN H. CAMPBELL, Circuit Judge.

New England Medical Center Hospital (the "Hospital") is an employer against whom there is currently pending an unfair labor practice complaint issued by the National Labor Relations Board at the instance of Rita Yard, a former Hospital employee. A hearing on the complaint has been noticed but not yet held. The district court action from which this appeal is taken was commenced by the Hospital to force the Board, under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552,[1] to grant access to documents in (1) the Board's "open" file in the pending unfair labor practice proceeding; and (2) two "closed" Board investigatory files relating to unfair labor practice charges made against the Hospital at about the same time by two other persons, the charges having since been dismissed by the Board. The Hospital asserts that it needs these to prepare an adequate defense.

The district court refused to inquire into the records contained in the three files, denied the Hospital's production request *in toto,* and entered summary judgment against the Hospital, relying upon *Goodfriend Western Corp. v. Fuchs,* 535 F.2d 145 (1st Cir. 1976), *cert. denied,* —— U.S. ——,

97 S.Ct. 257, 50 L.Ed.2d 158 (1976). We affirm.

I

The Hospital discharged Rita Yard in 1975. On November 24, 1975, she filed with the Board a charge that her discharge was in violation of section 8(a)(1) and (3) of the National Labor Relations Act being discriminatory and otherwise violative of her rights. The Board investigated, and on February 10, 1976, issued a complaint against the Hospital. A week later the Hospital addressed three identical letters to the Board's Regional Director, seeking, pursuant to FOIA, records in the Rita Yard case file and in two closed files pertaining to charges brought by other Hospital employees. In each instance the Board was asked to make available for inspection and copying,

> "copies of written reports and signed affidavits and all other written statements, signed or unsigned, which resulted from Board interviews with witnesses or which were submitted to the Board and are contained in the case file in the above case."

The Hospital indicated in later correspondence that it sought "factual information" only, and that if any portion of any document contained matters exempt from disclosure by the Act, "the reasonably segregable portion of that record after deletion of those portions that are exempt" should be furnished. *See* 5 U.S.C. § 552(b). The Hospital offered to pay the direct costs of document search and duplication.

The Board's Regional Director turned down the Hospital's request citing exemptions 7(A), (C) and (D).[2] He claimed that

---

* Of the Supreme Court (Ret.) sitting by designation.

1. The district court's jurisdiction is conferred by 5 U.S.C. § 552(a)(4)(B).

2. The Freedom of Information Act 5 U.S.C. § 552 requires an agency to make its records promptly available to any person who makes a proper request, *see* 5 U.S.C. § 552(a)(3), but

provides that the Act does not apply, among other exemptions, to,

> "(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, . . . (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source . . . ."

5 U.S.C. § 552(b)(7). In claiming exemption under 7(C) and (D), the Regional Director said

production would "interfere with enforcement proceedings", under 7(A), because in the investigation of unfair labor practice cases,

> "much information, including statements, is obtained from individuals who would be reluctant or would refuse to supply such information if it were routinely disclosable pursuant to a request under the Freedom of Information Act. . . . The protection of the identity of individuals and the substance of the information they submit in the Agency's investigation is an important means of assuring the Agency's continuing ability to obtain such relevant information. Individuals giving statements in the investigation are given express assurances that sworn statements will not be disclosed unless and until the individual is called as a witness in a formal proceeding, as provided for in [29 C.F.R.] Section 102.118(b) of the Board's Rules and Regulations. If the Agency were forced to disclose statements submitted or obtained during the investigation of the case, in circumstances other than those provided by Section 102.118(b) of the Board's Rules and Regulations, it would substantially deter voluntary cooperation of witnesses, hinder obtaining sworn information from all potential sources and, consequently, substantially interfere with present and future enforcement proceedings."

that production would invade the witnesses' privacy rights and would reveal the identity of confidential sources. In addition, the "executive privilege" for predecisional memoranda and the "attorney work product privilege" were claimed under Exemption 5, which incorporates the usual civil discovery privileges. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975).

3. The 7(C) privacy exemption was said to be inapplicable as it relates only to intimate personal details of private life, such as marital status, etc. And the Hospital disputed that the 7(D) confidential source exemption would ever apply on a blanket basis, since the Board does not guarantee confidentiality, viz. the informant may be called as a witness, in which event all or part of his statement may be disclosed. Some witnesses will not, in any event, object to disclosure.

The Hospital promptly appealed to the Board's General Counsel, disputing the Board's "boiler plate" approach. The Hospital argued that FOIA requires examination by an agency of "the particular document and the need to withhold it", together with consideration of all surrounding circumstances and possible protective measures—such as deletion of names, addresses, and other identifying information—which may be taken in a particular case to .preserve privacy.[3]

After its administrative appeal was denied, the Hospital brought the present district court action, requesting, pending disposition, either a speedy hearing or else an injunction staying the Board's scheduled hearing on the unfair labor practice complaint.

Along with its district court complaint, the Hospital filed a lengthy affidavit by Paul A. Smith, Jr., its personnel director. Rita Yard was discharged, according to Mr. Smith, for theft of Hospital property. Mr. Smith said that he was present when a Board agent interviewed nine supervisory employees with respect to her charge. He gathered from the agent that numerous Hospital employees and others had been interviewed outside his presence. The interviewing agent took copious notes, and in Mr. Smith's presence gave no assurances of confidentiality.[4]

4. Mr. Smith declared that he was also present in 1975 when supervisory employees were interviewed about charges brought by Richard K. Monks and Nicholas Komow and later dismissed. That investigation was the subject of the "closed" files which the Hospital now seeks to examine. Mr. Smith said that the Board agent took copious notes in his presence during the interviews of supervisory employees pertaining to the Monks' charge, gave no assurances of confidentiality, and indicated that he had statements from Monks (who had been discharged for theft) and others, including nonsupervisory employees and persons having information about thefts of Hospital property. With respect to Komow's charge, Mr. Smith learned that the Board had received an affidavit from Komow and "had requested that Komow withdraw his charge or it would be dismissed". Komow withdrew the charge.

Mr. Smith complained that the Hospital, with its over 4,000 employees, was faced with preparing a defense without means of rebutting "whatever false claims have been made", and that since the investigation he had information that Rita Yard and Richard Monks (see n.4) and others unknown had been engaged in a conspiracy to steal Hospital property.

In its answer to the Hospital's complaint, the Board indicated that it might reopen the closed Monks file in light of an ongoing investigation involving substantially identical violations. The Board asserted that its field attorney, Rosemary Pye, after examining "the requested record[s]" had reported that they were within FOIA's exemptions and that there were no reasonably segregable portions. The Board conceded that many of the factual statements it declined to disclose were those of persons the Board intended to call to testify at the hearing, but noted that pursuant to a Board rule, 29 C.F.R. § 102.118 (1976), the statements would be produced upon request for cross-examination. Finally, the Board denied that non-disclosure would cause the Hospital irreparable injury, but rather stated that disclosure of "such trial preparation information might assist plaintiff in preparing or constructing its defenses" in the ongoing case.[5]

At a district court hearing held on June 2, 1976, the Hospital presented its argument that FOIA entitled it to the requested material in both the open and closed files. Since our decision in *Goodfriend Western Corp. v. Fuchs, supra,* which relied on the second circuit's similar decision several months earlier in *Title Guarantee Co. v. NLRB,* 534 F.2d 484 (2d Cir.), *cert. denied,* —— U.S. ——, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976), had just come down, the Hospital was faced with distinguishing those cases. It did so on two grounds: the cases, the Hospital argued, dealt only with affidavits taken from employees and did not preclude disclosure under FOIA of statements in open files made by supervisory employees and non-employees; secondly, the decisions dealt with discovery of open, not closed file materials. The Hospital beseeched the court to "order the documents be brought into court [and] make findings of fact on whether or not in these closed files there is any possibility of harm [to the pending enforcement proceeding]—". The court, emphasizing our language in *Goodfriend Western Corp. v. Fuchs, supra,* 535 F.2d at 147, that Congress did not intend the FOIA to transfer "from the Board to the courts the case-by-case adjudication of discovery disputes in unfair labor practice proceedings", denied all relief to the Hospital.

## II

On the application of Exemption 7 to Labor Board records during an ongoing unfair labor practice proceeding, the lower federal courts are as yet without Supreme Court guidance. The Court declined to consider Exemption 7, as revised by Congress in 1974, in *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 162–65, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975).[6] We know the FOIA was meant to establish " 'a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language' ". *EPA v. Mink,* 410 U.S. 73, 80 n.6, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1972), *quoting* S.Rep. No. 813. On the

---

5. The Board's answer was accompanied by the affidavit of field attorney Pye. She said that the Monks' charge was filed on July 21, 1975, and Komow's on December 29, 1975. The Board dismissed the former on July 21, 1975; the latter was withdrawn on January 30, 1976. Ms. Pye asserted, "Many of the witnesses who gave affidavits for these two cases will be called as witnesses" in the pending Rita Yard case. She asserted that Monks had recently filed a new charge and was seeking to reopen his dismissed case. All the cases (i.e. Yard, Komow, Monks I and II, and a fifth case

brought by another former employee, Collins) were stated to allege retaliation by the Hospital against employees who participated in the organizational campaign of a certain union.

6. The legislative history of the 1974 amendments to FOIA and the reasons for the changes in Exemption 7 are discussed in the careful opinion written by Judge Oakes in *Title Guarantee Co. v. NLRB,* 534 F.2d 484, 488–92 (2d Cir.), *cert. denied,* —— U.S. ——, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976).

other hand, the Act's exemptions protect " 'certain equally important rights of privacy' " and governmental interests. The task is " 'to balance the opposing interests' ", with success lying in " 'providing a workable formula which encompasses, balances, and protects all interests, yet places emphasis on the fullest responsible disclosure.' " *Id.*

■ Four circuits, including ourselves, have held that employee statements and affidavits obtained by the Board in connection with an ongoing unfair labor practices case are exempt under 7(A) as their enforced production would, in the language of the exemption, "interfere with enforcement proceedings". *See Climax Molybdenm Co. v. NLRB,* 539 F.2d 63 (10th Cir. 1976); *Roger J. Au & Son, Inc. v. NLRB,* 538 F.2d 80 (3d Cir. 1976); *Goodfriend Western Corp. v. Fuchs, supra; Title Guarantee Co. v. NLRB, supra.* See also Judge Orrick's admirably lucid opinion in *Capital Cities Communications, Inc. v. NLRB,* 409 F.Supp. 971 (N.D.Cal.1976). Thus the Board was entitled under specific circuit precedent to withhold statements obtained from non-supervisory Hospital employees in connection with the "open" Rita Yard proceeding.

Three questions are presented here, however, that were not directly before the *Goodfriend Western* court: the status of (1) any records in the Board's open file that are not employee statements, (2) employee statements in interrelated but "closed" files, and (3) other records in such closed files. We conclude, as did the district court, that Exemption 7(A) shields these documents (and, so concluding, we need not refer to other, possibly applicable, exemptions, such as 7(C) and (D) and 5). The key question, of course, is whether production would "interfere" with the pending enforcement proceeding. The object of the 1974 revision of 7(A) was to end automatic exemption for all investigatory records compiled for law enforcement. The Government can now justify non-disclosure only by showing "that disclosure would interfere with enforcement procedures." 120 Cong.Rec. 17033 (1974) (remarks of Sen.

Hart). We must, therefore, consider to what extent production of records falling within the three described categories would "interfere" with the pending Rita Yard unfair labor practice proceeding.

Turning first to the open file documents (other than employee statements), these apparently include supervisors' statements and some statements by non-employees. The Hospital asserts that some of the declarants are not potential witnesses, says that it needs the material in order to construct a defense 'against possibly perjured testimony, and urges that a blanket exemption is particularly inappropriate since some of the material is so harmless as clearly not to interfere, if divulged, with the enforcement proceeding. The statements of the supervisory employees were, for example, given in the presence of the Hospital's personnel director, and are presumably well known by now to Hospital counsel. ·

■ This line of argument might be compelling if the only possible 7(A) "interference" with an unfair labor practice proceeding resulting from advance disclosure was that associated with giving the employer a greater chance to exercise his "leverage" over those in his employ. This sort of interference is mentioned in *Title Guarantee v. NLRB, supra,* 534 F.2d at 490, and we may concede that releasing statements of supervisors and non-employees would seem irrelevant to it. But the court in *Title Guarantee* also identified a second source of interference stemming from premature disclosure of the Board's case—the opportunity afforded a suspected violator to "frustrate the proceedings or construct defenses which would permit violations to go unremedied". *Id.* at 491. There is solid evidence in the legislative history that the sponsors of the 1974 amendments acknowledged the right of an investigative agency to avoid the possible harm to a prospective law enforcement proceeding that might occur through "premature release of evidence or information not in the possession of known or potential defendants." 120 Cong.Rec. 17033 (remarks of Sen. Hart). We think forcing the Board to disclose the supervisors' and

non-employee materials prior to the hearing would come within this recognized category of interference, especially as release would override the enforcement agency's own policies in a sensitive area upon which we do not think the FOIA was meant to intrude, and would, by injecting judicial supervision of pretrial discovery, threaten the agency's ability to prosecute cases with dispatch.

Early release even of supervisors' statements (let alone statements by unknown witnesses) cannot be said to lack any adverse impact on the Board's ability to prosecute its enforcement proceeding to a successful conclusion. Disclosure of the agent's notes of the interview, even one attended by Hospital representative, might give some insight into what parts of the interview the agent deemed important, and might also recapture some details that would otherwise have been missed. More important, systematic surrender of Board documents identified as constituting all of its file, or of some part thereof, would tend to show the outer limits of the Board's case, a useful piece of information even if negative. And the bone of contention here, of course, is not the more innocuous documents. The affidavit of the Hospital's personnel director makes it clear that what is being sought is information the Hospital now lacks, not documentation of what it already knows. To the extent disclosure of non-employee records would be meaningful to the Hospital, it would be meaningful because it would reveal, or might reveal, aspects of the Board's case which the Hospital does not know about. And this is the sort of disclosure which we think Exemption 7(A) permits the Board to block until after the hearing takes place, since enforced disclosure of such information, whatever its benefits, would interfere, from the enforcement agency's standpoint, with the pending enforcement proceeding.[7]

 This is not necessarily to applaud the Board's policy rejecting pre-trial discovery, see 29 C.F.R. § 102.118 (1976). Judge Orrick in Capital Cities Communications, Inc. v. NLRB, supra, 409 F.Supp. at 977, aptly called the policy "trial by ambush". But like Judge Orrick, we find no evidence that Congress, in enacting or amending FOIA, meant to force a different policy upon this agency. To the contrary, the history shows recognition that law enforcement agencies will, in varying degrees, deem it advisable to close their files to suspected violators prior to trial, and that the FOIA is not intended to prevent such policies while enforcement proceedings are pending or in prospect. Exemption 7(A) applies whenever disclosure would "interfere" with an enforcement proceeding, and it is difficult to conceive of a greater interference than one which would involve the courts in arbitrating the Board's control of what documents to retain and what to surrender immediately prior to an enforcement proceeding. As Judge Oakes wrote in Title Guarantee:

> "We cannot envisage that Congress intended to overrule the line of cases dealing with labor board discovery in pending enforcement proceedings by virtue of a back-door amendment to the FOIA when it could very easily have done so by direct amendment to Section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), or by a blanket enactment pertaining to discovery in pending administrative enforcement proceedings." [Footnote omitted.]

Title Guarantee Co. v. NLRB, supra, 534 F.2d at 491–92. Accord, Goodfriend Western Corp. v. Fuchs, supra, 535 F.2d at 147. The thrust of FOIA is to provide public information, not benefit to private litigants. See NLRB v. Sears, Roebuck & Co., supra,

7. While the Hospital's "rights under the Act are neither increased nor decreased by reason of the fact that it claims an interest in the [files] greater than that shared by the average member of the public", NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 143 n.10, 95 S.Ct. 1504, 1513, 44 L.Ed.2d 29 (1975), the pending litigation is critical to the Board's claim of exemption under 7(A). Thus, unlike the Sears case where the litigation context was not relevant to the application of Exemption 5, our references to the underlying proceeding and to the Hospital's position as a litigant are necessary to point up the precise nature of the threat to enforcement proceedings that is the basis of the claimed exemption.

421 U.S. at 143 n.10, 95 S.Ct. 1504; *Renegotiation Board v. Bannercraft Clothing Corp.,* 415 U.S. 1, 24, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1973); *Capital Cities Communications, Inc. v. NLRB, supra,* 409 F.Supp. at 977.

Reading Exemption 7(A) as permitting the nondisclosure of all or most open file documents in a pending unfair labor practices case does not signal a return to the discredited permanent exemptions which led Congress in 1974 to tighten 7(A). *See* 120 Cong.Rec. 17034–35 (1974). Such cases provided exemption from disclosure "forever", *e. g., Weisberg v. Department of Justice,* 160 U.S.App.D.C. 71, 489 F.2d 1195, 1202–03 (1973), *cert. denied,* 416 U.S. 993, 94 S.Ct. 2405, 40 L.Ed.2d 772 (1974). *See Title Guarantee, supra,* 534 F.2d at 488–89. It was the automatic continuing exemption of records even after a file had become totally inactive that led Congress to amend Exemption 7. *See* 120 Cong.Rec. 17034–35 (1974). An agency policy of denying to a suspected violator access to its case pending completion of administrative and judicial proceedings is quite different from denying documents to the public indefinitely or "forever".[8]

■ The Hospital argues that while records which clearly tip the Board's hand in a pending proceeding might be exempt, the burden is upon the agency to prove, record by record and, indeed, sentence by sentence, that disclosure would have that effect. And it may be that the worst harm to the Board's case through premature revelations could, in theory, be avoided by *in camera* judicial inspection and other document by document screening procedures, including editing of records, commonly followed in FOIA proceedings in other settings. *See Department of the Air Force v. Rose,* 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). But in conjunction with an un-

fair labor practice proceeding, this cure would seemingly be a greater threat to the enforcement proceeding than the disease. The specter of involvement of the district court in discovery matters during an ongoing unfair labor practice proceeding, with lengthy stays while the district court (and court of appeals) review the Board's file, is a compelling reason to construe Exemption 7(A) to shelter investigatory records in the Board's case file prior to the time that foreseeable administrative and judicial proceedings are completed. Any other approach could trap the Board into foregoing all claims to exemptions under FOIA if it is not to accept crippling delays in the prosecution of unfair practice cases while litigating the exemptions in court.

■ In upholding such an operational interpretation of 7(A) we recognize that "disclosure, not secrecy, is the dominant objective of the Act", and that exemptions are to be "narrowly construed". *Department of the Air Force v. Rose, supra,* 425 U.S. at 361, 96 S.Ct. 1592 and cited cases. But the variety of agencies and documents to which FOIA applies is, if not infinite, virtually so. Considerations applicable to public disclosure of classified nuclear test records, *EPA v. Mink, supra,* or of documents evaluating agencies' personnel management programs, *Vaughn v. Rosen,* 157 U.S.App.D.C. 340, 484 F.2d 820 (1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), are different from those where a respondent seeks to utilize the Act as a discovery tool in adversary proceedings. Because FOIA permits *in camera* inspection of records, 5 U.S.C. § 552(a)(4)(B), and contemplates disclosure of non-exempt portions of otherwise exempt files, 5 U.S.C. § 552(b), as well as for other reasons, courts have not favored blanket exemptions. *Department of the Air Force v. Rose, supra.* Still, the "exemptions to disclosure under the Act were in-

---

**8.** In *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 159–60, 95 S.Ct. 1504, 1521, 44 L.Ed.2d 29 (1975), the Court declined to require disclosure of Advice and Appeals Memoranda which direct the filing of a complaint on the ground, in part, that such Memoranda "inexorably contain the General Counsel's theory of the case and

may communicate . . . some litigation strategy or settlement advice." The Court went on to say, "[T]he public's interest in disclosure is substantially reduced by the fact . . . that the basis for the General Counsel's legal decision will come out in the course of litigation before the Board".

tended to be practical workable concepts," *id.,* 425 U.S. at 381–82, 96 S.Ct. at 1608. We also think that the provision for *in camera* review, which is permissive rather than mandatory, should be applied in a workable way.[9] While the burden on the agency of producing documents for *in camera* review might well not sustain a claim to a permanent exemption, the FOIA is sufficiently flexible to accommodate the agency's interest in swift and effective enforcement proceedings by allowing it to withhold certain information temporarily without close judicial oversight.

■ We hold that the district court properly refused to order disclosure of the contents of the open file. We add that, in the sound discretion of a district court, the Board may be required to verify by affidavit or otherwise that the exempt open file contains nothing but statements, evidence or other material relevant to the unfair labor practice complaint then being prosecuted. Unrelated materials would not be exempt under 7(A) merely because inserted in the open file.

### III

We next consider whether the closed file records are exempt under 7(A). The Hospital argues that both existing precedent and the legislative history surrounding the 1974 amendments limit Exemption 7(A) to open files. Thus from the *Attorney General's Memorandum on the 1974 Amendments to the Freedom of Information Act (1975)* it quotes as follows:

"Normally, clause (A) will apply only to investigatory records relating to law enforcement efforts which are still active or in prospect—sometimes administratively characterized as records in an 'open' investigatory file. . . ."

The Committee on Federal Legislation of the Association of the Bar of the City of New York is cited as criticizing court decisions which applied the prior exemption to "closed" as well as "open" investigatory files, and as adopting the view that, "Exemption 7 was intended only to protect against premature disclosure in a pending investigation". The same thought is echoed by Judge Oakes in *Title Guarantee,*

"It was with this particular problem of unavailability of closed files in mind that the 1974 amendments to Exemption 7 were adopted."

*Title Guarantee Co. v. NLRB, supra,* 534 F.2d at 490. But we find nothing in the foregoing that conflicts with application of Exemption 7(A) to the materials here in question even though these come from what, in one sense, are closed files. The records being sought are properly characterized as "investigatory records relating to law enforcement efforts which are still active or in prospect". *Attorney General's Memorandum, supra.* This is not a case where an agency seeks to bury files which have served their purpose, but one where the closed file documents remain fully relevant to a specific pending enforcement proceeding, although, to be sure, not the one for which they were precisely intended. While the Monks and Komow charges were dismissed, they are factually related to the one that gave rise to the pending Rita Yard charge. The Board asserts that all three persons were involved in common organizational activities pertaining to a certain union. The Board says it plans to call as witnesses many of those who gave affidavits in the Monks and Komow matters. Mr. Smith's affidavit links Monks and Yard, both of whom the Hospital discharged in 1975, in an alleged conspiracy to steal from the Hospital. In these conditions, where the same employer is involved and the sub-

---

**9.** In *EPA v. Mink,* 410 U.S. 73, 91–92, 93 S.Ct. 827, 35 L.Ed.2d 119 (1972) the Court spoke of the appropriateness of a "flexible, common-sense approach", one that is not "unnecessarily rigid". *In camera* inspection is not to be "automatic". The Court went on to indicate, in the context of an Exemption 5 question, that affidavits or even "surrounding circumstances" might be enough to show that certain documents met the requisite criteria for exemption. The statute has since been amended to permit *in camera* inspection of any record, 5 U.S.C. § 552(a)(4)(B), but such review is not required. We think that the flexible approach of *EPA v. Mink, supra,* still applies.

ject matter of the closed file complaint is contemporaneous and so intimately connected with that of the pending enforcement proceeding, Exemption 7(A) would seem as fully applicable to the closed as to the open file records. Exemption 7(A) makes no express distinction between records coming from a file which the agency has at one time, and for one purpose, "closed", and those from a file designated "active". To be sure, the FOIA may require that the records, to qualify under 7(A), be germane to "a concrete prospective law enforcement proceeding" which "would be harmed by the premature release of evidence or information not in the possession of known or potential defendants." 120 Cong.Rec. 17033 (1974) (remarks of Sen. Hart). As earlier noted, the object of the 1974 amendments was to end automatic exemption for all investigatory records compiled for law enforcement; the Government now has to justify nondisclosure by showing "that disclosure would interfere with enforcement proceedings". *See id.* None of these criteria, however, exclude records from 7(A) exemption merely because the agency labels the file from which they come as "closed" rather than "open".

■ The crucial question, therefore, is whether the records in the Monks and Komow files would, if produced, "interfere" with the Rita Yard proceeding. The answer, we think, under the reasoning already given, must be that they would. Insofar as they include employee statements, the rationale for non-disclosure is identical to that set forth in *Title Guarantee,* with the unimportant difference that while currently germane to a pending case the records were generated in a related and now inactive investigation. Insofar as the records include factual matters that are not employee statements but are nonetheless relevant to the Rita Yard case, they are also entitled to 7(A) exemption for the reasons earlier given with respect to similar materials in the "open" file. That is, they are part of the Board's case, discovery of which will "interfere" with Board proceedings by enabling a possible violator to construct defenses.

■ It may be argued that the district court went too far in exempting all open and closed file documents since some of the latter may well be irrelevant to the Rita Yard case, and hence disclosable. But if so, they would seemingly be of little interest to the Hospital, which in its complaint makes clear that its purpose in obtaining the records is solely to discover "facts, evidence and leads to evidence" necessary to prepare a defense in the Rita Yard proceeding. This seems to be another way of asking for maximum disclosure of the Board's case in chief—a reasonable enough request, perhaps, from the Hospital's viewpoint, but one which, as we have explained, the Board need not accede to. While records not relevant to the Board's case might be disclosable under the FOIA, the Hospital's declared purpose in bringing this discovery action renders the distinction meaningless in this case: we see no point in separating the material since the Hospital has said that it wants only what we hold it cannot have at this time. In any event, we think that where, as here, the records sought bear such an obvious relationship to the pending proceeding, the Board's decision as to relevancy, if reasonable and not arbitrary on its face, and supported by affidavits if necessary, should be final. The 7(A) exemption as construed here is but temporary, and the involvement of a court in making pre-trial rulings on relevancy would massively interfere with the Board's enforcement capabilities.

In holding that the relevant closed file records are not disclosable as a part of the Board's "case" in the Rita Yard proceeding, we go no further than the facts here, where the closed file is essentially contemporary with, and closely related to, the pending open case to which the records relate. We mean to express no opinion on the extent to which a similar rationale would obtain if there were a greater temporal separation, or a lesser factual relationship, between the separate files. Nor do we express any opinion on the Board's alternative arguments, such as that the closed files are exempt (perhaps permanently) quite apart from their effect on this pending case, since dis-

closure would impair the Board's future unfair labor practice enforcement capabilities by deterring employees from speaking freely in other investigations. *Cf. Frankel v. SEC*, 460 F.2d 813, 817–18 (2d Cir.) *cert. denied*, 409 U.S. 889, 93 S.Ct. 125, 34 L.Ed.2d 146 (1972). *But cf.* 120 Cong.Rec. 17033–34 (1974).

Finally, we recognize that in allowing the Board's discovery-resistant policies to stand, we may seem to endorse and even encourage "trial by ambush" procedures which, in the eyes of many, are outmoded and unfair. But given the employment relationship which affords certain weapons to an employer, as well as the built-in delays of many discovery devices, we are not able, in our own wisdom, to appraise the appropriateness of the Board's practices. Judge Oakes correctly described the balance existing between employer and employee in labor proceedings as "delicate". *Title Guarantee Co. v. NLRB, supra,* 534 F.2d at 492. To interpret FOIA as a pre-trial discovery weapon so as to significantly alter the balance of forces existing among employers, unions and the Board in hard fought unfair labor practices cases seems to us to go beyond anything contemplated by Congress in FOIA and, as a matter of policy innovation, to be outside the proper sphere of a court.

*Affirmed.*

## MEMORANDUM AND ORDER

## ON PETITION FOR REHEARING

Moving for a rehearing, the Hospital asserts that just before issuance of our opinion, and unknown to this court, the Hospital entered into a non-Board settlement with Rita Yard. Accordingly, the ground relied upon in this court's opinion, Exemption 7(A), is said to be no longer applicable, as disclosure of the files in question would allegedly no longer interfere with at least that enforcement proceeding. The Hospital also argues that we erred in assuming that its only reason for seeking disclosure was to defend in the Rita Yard proceeding.

We deny the motion for rehearing. Our decision was, of course, based upon the fac-

tual situation existing at the time the district court rendered the judgment appealed from. At that time, the Hospital was faced with an enforcement proceeding on behalf of Rita Yard; in its complaint the Hospital said it sought disclosure in order to prepare a defense.

Assuming that a different factual situation now obtains, it would plainly be inappropriate for this court to attempt to ascertain, as part of this appeal, the facts of the allegedly new situation, and to adjudicate *de novo* whatever exemption claims may be advanced in the new situation. This court is also satisfied that it acted correctly in proceeding on the assumption that the Hospital's interest in disclosure was for the reasons asserted in its complaint. In any event, the denial of *in camera* review in the context of a pending enforcement proceeding was based on more general concerns as well.

This is not to say that a changed factual situation could not alter the Board's posture under FOIA and with respect to Exemption 7(A). Obviously this court's reasoning as to the 7(A) exemption drew sustenance from the factual setting. In our opinion an attempt was made to indicate the facts deemed important to decision, as well as to identify some of the issues still left open. If the Hospital believes that it is now entitled to relief under FOIA because of changed circumstances not covered in our decision, it should renew its request to the Board and thereafter if appropriate seek relief in the district court.

We are fully sensitive to the policy of expedition in FOIA proceedings and are conscious of the delay our action implies. But the Board and district court, if necessary, should have the opportunity to focus on any claim made in new context. We would hope that any new proceeding could move forward to resolution rapidly.